## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:18-CR-693 |
| Plaintiff, | : | |
| | : | JUDGE CHRISTOPHER A. BOYKO |
| vs. | : | |
| HOWARD DUNCAN, | : | **SENTENCING MEMORANDUM** |
| | : | **FOR HOWARD DUNCAN** |
| Defendant. | : | |

Defendant Howard Duncan, through undersigned counsel, submits the instant Sentencing Memorandum for the Court's consideration and requests a sentence, as calculated and reviewed pursuant to Title 18, United States Code §§ 3553(a) and 3661, that is sufficient but not greater than necessary to achieve the statutory goals of sentencing. Counsel attaches the following Memorandum to assist the Court in fashioning Mr. Duncan's sentence.

        Respectfully submitted,

        STEPHEN C. NEWMAN
        Federal Public Defender
        Ohio Bar: 0051928

        */s/ Jeffrey B. Lazarus*
        JEFFREY B. LAZARUS
        Assistant Federal Public Defender
        1660 W. 2nd Street, Suite 750
        Cleveland, Ohio 44113
        Telephone: (216) 522-4856
        Facsimile: (216) 522-4321
        jeffrey_lazarus@fd.org

        Attorney for Howard Duncan

## MEMORANDUM

### I.  Introduction

Defendant Howard Duncan (referred to herein as "Howard") now appears before this Court for sentencing. Howard is a 26-year-old man who has pled guilty to illegally possessing a firearm. Howard's sentencing range, as properly calculated should be 57 to 71 months, at total offense level 23, Criminal History Category III. Based on his personal history and characteristics, he requests this Court impose a sentence of 60 months of incarceration. Such a sentence is sufficient but not greater than necessary to achieve the statutory sentencing factors under 18 U.S.C. § 3553(a).

### II.  Objection to the Presentence Report -- No enhancement should apply under U.S.S.G. § 2K2.1(b)(6)(B)

Howard has one objection to the presentence report. In paragraph 16, the presentence report imposes a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), claiming Howard possessed the firearm in connection with another felony offense. The presentence report concludes that Howard committed a felonious assault while possessing the firearm. PSR at ¶ 16. The presentence report is incorrect and this enhancement should not apply.

In order to best understand the issue at hand, a detailing of the offense and the facts surrounding it are necessary. In October of 2018, Howard was a terrible mess. He had been using cocaine and heroin daily for nearly a year. He was also terribly addicted to alcohol and drinking a fifth of liquor daily. He was worker a furniture mover, but all his income went to drugs and alcohol so he had no stable living situation. He was homeless and suffering from terrible depression, anxiety, and paranoia. On the night of October 4, 2018, he was drinking at the Victory Lap Bar on Storer Avenue in Cleveland. He was there with his brother and girlfriend; all

three had been drinking pretty heavily and were still there around 2:00 a.m. The discovery provided by the government includes a video surveillance file of the parking lot outside the bar.

Around 2:04 a.m. two cars pull into the parking lot, and several young men get out of their cars and go into the bar. These guys who arrived began to fight with other people who were already in the bar. Those who were engaged in the fighting decided to take their fight outside, and at around 2:06 a.m. about a dozen people left the bar and stood in the parking lot. For the sake of clarity, screenshots taken from the video are shown below.[1]



---

[1] Defense counsel is able to provide the Court with a copy of the video if the Court feels viewing it would better illustrate these events.

As the crowd of onlookers watched, two of the young men began to have a fistfight in between two of the cars in the parking lot.



The two fighting traveled around the lot, and ultimately the young man under the red arrow got punched in the face.



The guy who got punched, walked away, but continued to argue with others, then he rejoined the fight and got hit in the face again. During this time, Howard and several others emerged from the bar; Howard was quite drunk, and began to watch the fight.



The two fought for another forty seconds, and then stopped. The man who had been punched twice, then walked to his car, went up to a young female who he began talking to, then punched her directly in the face. She immediately went down to the ground.



All the onlookers became outraged that this young man had punched this woman. They stepped in to try to subdue this man, but a giant melee broke out.



Howard did not want to be involved in the fight, but like the others, was upset that this female had been punched in the face. Howard was afraid more people were going to get hurt, and thought he would help by the situation by trying to end the fight. Howard had a gun on him, and believed if he fired a shot, the crowd would disperse and no one else would get hurt. So, he walked away from the crowd, and moved several cars over to where no one else was around. Howard's position is indicated by the red arrows (next page).





9

Howard then fired the gun in the air. He was not aiming at anyone, but fired to break up the crowd.



The crowd ended up dispersing as everyone ran away. A little while later, the police arrived, and Howard was apprehended for possessing the firearm.

Under these facts, the four-level enhancement cannot apply as no felonious assault occurred. Howard did not cause harm to any person. He was not aiming or firing the gun at anyone, but the surveillance video makes clear that Howard's actions were to disperse the crowd. That being said, Howard knows what he did was dangerous and stupid. He knows his actions were illegal and someone could have been hurt, and for that he is very sorry. This, however, does not constitute a felonious assault. The Ohio felonious assault statute, Ohio Revised Code §

10

2903.13(A)(2) requires there to be a showing that he either caused or attempted to cause physical harm with a deadly weapon. There is no evidence that Howard caused or attempted to cause harm to a specific person. The fact that other people were in the vicinity does not prove Howard was aiming at, or firing, at them. Thus, a felonious assault cannot be sustained.

There is, however, a more appropriate charge that describes Howard's conduct in this case would be Ohio Revised Code § 2923.162, the discharge of a firearm on or near prohibited premises. That statute prohibits a person from discharging a firearm at a variety of places, including "the property of another." As Howard fired the gun near both a bar and the residences in the area, he would be guilty of such an offense under state law. *See* Ohio Revised Code § 2923.162(B)(2). This offense, however, is a misdemeanor of the first degree, Ohio Revised Code § 2923.162(C)(1), and not a felony, and therefore cannot qualify as "another felony offense" under U.S.S.G. § 2K2.1(b)(6)(B). As the enhancement cannot apply, Howard's total offense level becomes 23, and with his Criminal History Category III designation, his sentencing guideline range is 57 to 71 months. Knowing the seriousness of his conduct and actions that night, he asks this Court to impose a within-guideline range sentence of 60 months.

**V.     Howard Duncan's personal history and characteristics**

In support of his request for a 60-month sentence, Howard asks this Court to consider his personal history and background under 18 U.S.C. § 3553(a)(1). Howard is a 26-year-old man who has spent his whole life in Cleveland. He is the youngest of seven siblings. His parents were not married, and he was raised primarily by his mother in the Wade Park area of Cleveland. His father lived in the area as well, and assisted in raising him.  Howard recalls that as he grew up in 1990s and early 2000s, the Wade Park area was infested with drugs, gangs, guns, and violence. Howard remembers seeing drug dealers, gangs, and guns wherever he went – on the way to

11

school, at the corner store, even on his street – and no matter what he did he could not avoid these negative influences.

When Howard was ten years old, his father died suddenly of a heart attack. Howard was devastated by the loss of his father. He was never offered any grief counseling. Howard remembers that this is when his problems in school really began to take off. Howard went to public schools in Cleveland, but struggled with his education. He was forced to repeat the Sixth Grade, which occurred shortly after his father died. He remembers that he would get in trouble for behavior issues and had a hard time learning. He recalls that as a kid he had a hard time controlling his anger and would punch walls. Despite his anger issues, behavior issues, and poor learning, Howard was never referred for any counseling or mental health services in the school, nor was he assessed for a learning disability. He believes, however, that he has suffered from mental health issues his whole life, and likely has a learning disability as well. Howard believes his poor behavior and anger really began when his father died, and the loss is something he never really had a chance to confront with a professional. He now believes that he could benefit from mental health counseling and hopes that this Court orders it while he is in the Bureau of Prisons.

As a teenager, Howard was influenced by others to experiment with drugs and alcohol. Throughout his teenage years, he continued to use drugs and alcohol frequently. His struggles with school ultimately ended in him dropping out of school in the Tenth Grade. He continued to use heavily into adulthood, and even began using harder drugs. He eventually began selling drugs in order to pay for his habit. By 2018, Howard was using heroin and cocaine regularly. He was drinking a pint of liquor a day and considered himself to be a full-blown alcoholic. He had worked at various times, but all his income went to feed his drug habit. *See* PSR at ¶¶ 57-60. Throughout 2018, his drug habit led to his mother kicking him out of the house, and was

homeless. At times, he slept on the couches of friends but there were times when he slept on the streets of Cleveland. Between his homelessness and his substance abuse problems, Howard was greatly struggling with depression. He was having panic attacks frequently and was having thoughts of hurting himself.

Howard had also been the victim of several assaults and robberies from others while living on the street. He became very paranoid of others, and began to suspect that he was under constant threat of attack. In order to protect himself, he acquired a gun and carried it with him in case he needed to defend himself from attack. He recognizes that he was excessively paranoid and believed people may have been trying to kill him even though that was not the case. He feels his mental health issues and drug use were affecting his thinking. On the night of his arrest, he had the gun on him while at the bar. That evening, he was drinking heavily, and as was highly intoxicated when the incident occurred outside the bar. He deeply regrets his actions that evening, but wants this Court to understanding his struggles with mental health issues, a drug and alcohol addiction, and his homelessness. He asks this Court to consider what he was going through in fashioning his sentence.

**VI.     Conclusion**

For the foregoing reasons, Howard Duncan asks this Court to impose a sentence of 60 months of incarceration, which is a sentence that is sufficient but not greater than necessary to achieve the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Jeffrey B. Lazarus*
Assistant Federal Public Defender
Ohio Bar: 0079525
1660 W.2nd Street, Suite 750
Cleveland, Ohio 44113
Phone: 216-522-4856
Fax: 216- 522-4321
jeffrey_lazarus@fd.org

Attorney for Howard Duncan

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2019, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Counsel will send a copy to government by e-mail.

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender

14